1
2
3
4

**UNITED STATES DISTRICT COURT**

5

**NORTHERN DISTRICT OF CALIFORNIA**

6

**SAN JOSE DIVISION**

7

8    IOANNIS KANELLAKOPOULOS,          Case No. 15-cv-04674-BLF

9              Plaintiff,

10          v.                         **ORDER VACATING HEARING ON
                                        PLAINTIFF'S MOTION FOR NEW
11   UNIMERICA LIFE INSURANCE          TRIAL; AND DENYING MOTION**
     COMPANY,
                                        [Re: ECF 287]
12
              Defendant.
13

14

15         Plaintiff, Dr. Ioannis Kanellakopoulos, moves for a new jury trial pursuant to Federal Rule

16   of Civil Procedure 59(a)(1)(A). The motion has been fully briefed. Having reviewed the briefing,

17   the record, and the relevant legal authorities, the Court finds the motion to be appropriate for

18   disposition without oral argument. *See* Civ. L.R. 7-1(b). The Court VACATES the hearing set for

19   May 16, 2019. The motion is DENIED for the reasons discussed below.

20   **I.    INTRODUCTION**

21         Plaintiff filed this action against Defendant Unimerica Life Insurance Company in October

22   2015, alleging that Defendant wrongfully denied him benefits under a catastrophic disability

23   policy. Compl., ECF 1. Plaintiff asserted claims for (1) breach of contract, (2) breach of the

24   implied covenant of good faith and fair dealing (insurance bad faith), and (3) violation of

25   California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200

26   *et seq. Id.* Claims 1 and 2 were tried to a jury, which found that Plaintiff did not suffer a covered

27   loss under the Unimerica policy. Jury Verdict Form, ECF 247. That finding was dispositive of

28   both Claims 1 and 2, as Plaintiff could not prevail on either of those claims absent a covered loss.

1    *Id.* Claim 3 was tried to the Court, which found for Defendant and against Plaintiff.  FFCL, ECF

2    282.  Judgment was entered for Defendant on October 17, 2018.

3         Plaintiff timely filed a motion for new trial on November 14, 2018.  Motion for New Trial,

4    ECF 287.  He asserts that the jury verdict was tainted by four errors.  First, Plaintiff argues that

5    Jury Instruction No. 33 improperly instructed the jury that he needed to prove his disability claim

6    with medical evidence when no medical evidence is required under the policy.  Second, he asserts

7    that the Court should have excluded the testimony of Defendant's expert neuropsychologist,

8    Richard Perrillo, Ph.D., under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  Third,

9    Plaintiff contends that the Court improperly admitted testimony of Unimerca's expert psychiatrist,

10   Jonathan Chamberlain, M.D., regarding Plaintiff's "judgment," over Plaintiff's objection that

11   testimony regarding "judgment" was outside the scope of Dr. Chamberlain's expert reports.

12   Finally, Plaintiff argues that the Court should have stricken Dr. Chamberlain's improper testimony

13   regarding the policy's provision addressing Activities of Daily Living ("ADL").

14   **II.    LEGAL STANDARD**

15        After a jury trial, a court may grant a new trial "for any reason for which a new trial has

16   heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  Because

17   Rule 59 does not specify the grounds on which a new trial may be granted, courts are "bound by

18   those grounds that have been historically recognized."  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724,

19   729 (9th Cir. 2007) (internal quotation marks and citation omitted).  "Historically recognized

20   grounds include, but are not limited to, claims that the verdict is against the weight of the

21   evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the

22   party moving."  *Id.* (internal quotation marks and citation omitted).

23        "[E]rroneous jury instructions, as well as the failure to give adequate instructions, are also

24   bases for a new trial."  *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).  "An

25   instruction is erroneous when, viewing the instructions as a whole, the substance of the applicable

26   law was not fairly and correctly covered."  *Frost v. BNSF Ry. Co.*, 914 F.3d 1189, 1194 (9th Cir.

27   2019) (internal quotation marks, citation, and brackets omitted).  "If there is an error, we presume

28   that the error was prejudicial and the non-moving party bears the burden of establishing that it is

2

1   more probable than not that a properly instructed jury would have reached the same verdict." *Id.*

2   (internal quotation marks and citation omitted).

3       A new trial also is warranted when the "erroneous inclusion or exclusion of evidence in the

4   underlying proceeding prejudices a party's right to a fair trial." *Dorn v. Burlington N. Santa Fe*

5   *R.R. Co.*, 397 F.3d 1183, 1189 (9th Cir. 2005).  However, "[a] new trial is only warranted when an

6   erroneous evidentiary ruling 'substantially prejudiced' a party." *Ruvalcaba v. City of Los Angeles*,

7   64 F.3d 1323, 1328 (9th Cir. 1995).  Where the party seeking a new trial establishes that expert

8   testimony was admitted in error, the burden is on the beneficiary of the error to show that "it is

9   more probable than not that the jury would have reached the same verdict even if the evidence had

10  not been admitted." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 465 (9th Cir. 2014)

11  (internal quotation marks and citation omitted).

12  **III.   DISCUSSION**

13      Applying these standards, the Court concludes that Plaintiff has failed to establish grounds

14  for a new trial.  Before turning to his asserted grounds for relief, however, the Court addresses

15  Defendant's objection to Plaintiff's submission of an affidavit from one of the jurors in this case,

16  Frederic Alagueuzian.

17      **A.     Juror's Affidavit**

18      "A juror's observations may not be used as grounds to grant a new trial absent exceptional

19  circumstances." *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1140 (9th Cir. 1999).  This

20  rule is codified in Rule 606(b) of the Federal Rules of Evidence, which provides as follows:

21      During an inquiry into the validity of a verdict or indictment, a juror may not testify
        about any statement made or incident that occurred during the jury's deliberations;
22      the effect of anything on that juror's or another juror's vote; or any juror's mental
        processes concerning the verdict or indictment. *The court may not receive a juror's*
23      *affidavit or evidence of a juror's statement on these matters.*

24  Fed. R. Evid. 606(b)(1) (emphasis added).  The rule enumerates three exceptions to this blanket

25  prohibition, providing that "[a] juror may testify about whether:  (A) extraneous prejudicial

26  information was improperly brought to the jury's attention; (B) an outside influence was

27  improperly brought to bear on any juror; or (C) a mistake was made in entering the verdict on the

28  verdict form.  Fed. R. Evid. 606(b)(2).

3

1      Plaintiff has submitted a declaration from the jury foreperson, Frederic Alagueuzian,

2   regarding the importance the jury placed on Jury Instruction No. 33 and the testimony of the

3   defense experts. *See* Alagueuzian Decl., Exh. L to Creitz Decl., ECF 288-12. Plaintiff relies on

4   the declaration to show that he was prejudiced by the Court's asserted errors in giving Jury

5   Instruction No. 33 and admitting the testimony of defense experts Dr. Perrillo and Dr.

6   Chamberlain. As Defendant points out in its opposition, Plaintiff's proposed use of Mr.

7   Alagueuzian's declaration for this purpose falls squarely within the prohibition of Rule 606(b).

8   Mr. Alagueuzian's statements, which focus solely on the jury's internal deliberations, do not fall

9   within any of the exceptions. Plaintiff does not dispute – or even acknowledge – the Rule 606(b)

10  bar in his reply brief.

11      Mr. Alagueuzian's declaration, discussing the internal processes of the jury in this case, is

12  STRICKEN. *See United States v. Leung*, 796 F.3d 1032, 1035 (9th Cir. 2015) ("Although an

13  exception to Rule 606(b) permits inquiry into whether 'extraneous influences' tainted the verdict,

14  juror testimony regarding the jury's 'internal processes' is categorically barred.").

15  **B.      Jury Instruction No. 33**

16      Plaintiff challenges Jury Instruction No. 33 on the asserted basis that it improperly

17  instructed the jury that he needed to prove his disability claim with medical evidence when, in his

18  view, no medical evidence is required under the policy. Jury Instruction No. 33, titled "Re: Policy

19  Terms that Require Interpretation," quotes and interprets several policy provisions. The portion of

20  the instruction addressing medical evidence reads as follows:

21          I instruct you that under the insurance policy proof of a claim for catastrophic
            disability must include medical documentation. The insurance policy does not
22          require any specific amount of medical evidence to prove a claim, nor does the
            policy exclude other types of evidence that may prove a claim. Do not read into
23          this instruction, or the following instructions, that I have any view as to the specific
            medical documentation and records Dr. Kanellakopoulos must provide in order for
24          him to be entitled to benefits under the policy. It is up to you, the jury, to
            determine whether Dr. Kanellakopoulos submitted the documentation and records
25          the policy requires.

26  Jury Instruction No. 33, ECF 240.

27      Plaintiff argues that this instruction was erroneous because the policy does not require an

28  insured to provide any medical evidence at all to perfect a claim. His view is that the policy

4

1    requires an insured to provide medical proof of ongoing disability, but only after the claim initially

2    is granted.  Defendant argues that the policy does require medical proof at the time a claim is

3    presented, and thus that Jury Instruction No. 33 properly stated Plaintiff' obligations under the

4    policy.

5          Jury Instruction No. 33 was the subject of extensive argument in chambers, with Plaintiff

6    asserting his current position that no medical evidence was required to present a claim of

7    catastrophic disability and Defendant arguing its position that contemporaneous medical evidence

8    showing catastrophic disability throughout the entire period of disability was required to support a

9    claim.

10         After a close reading of the policy in full, and careful consideration of both parties'

11   positions, the Court interpreted the relevant policy provisions to require some medical

12   documentation as part of the proof of claim.  The provision titled "Catastrophic Disability Benefit"

13   states that Defendant "must receive proof that Your Disability is a Catastrophic Disability, as

14   defined."  Policy at CERT 0010, Exh. A to Creitz Decl., ECF 288-1.  The required "proof" is

15   described in the "Claim Provisions," which state that upon notice of a claim, Defendant will send

16   the insured "forms for giving Us Proof of Claim."  Policy at CERT 0013.  The provision titled

17   "Filing a Claim" states as follows:

18         **Filing a Claim:**  The claim form will have instructions for completion of the form
           and documentation for Proof of Claim.  *For Disability claims*, the form will instruct
19         the claimant and his or her employer, if applicable, to fill out their own sections of
           the claim form *and give it to the claimant's attending Physician for completion of*
20         *the Physician's section.  The Physician should return the completed form directly*
           *to Our Claim Office.*  For all other claims, the claimant should also complete the
21         form in accordance with its instructions, and return it to Us at Our Claim Office.

22   Policy at CERT 0013 (emphasis added).  Finally, the provision titled "Proof of Claim" states that

23   "[f]or Disability claims, Proof of Claim means the documentation stated in the claim form,"

24   including certain enumerated information.  *Id*.  The Court read these provisions together to mean

25   that an insured who wishes to submit a disability claim must submit a claim form which includes a

26   section to be completed and returned to Defendant by the insured's physician.  The physician's

27   section in turn directs the physician to "include copies of all applicable office notes and test

28   results" when returning the form to Defendant.  Attending Physician's Statement CF 0035, ECF

1    76-38.[1]  Thus, in the Court's view, the policy contemplated and required that medical evidence

2    would be submitted as part of and with the initial claim form for disability claims.  Plaintiff simply

3    disagrees with the Court's interpretation.

4              Even if the instruction were erroneous, any such error would not have prejudiced Plaintiff.

5    As he concedes in his reply brief, "[t]here was no dispute that Plaintiff had submitted some

6    medical documentation, and the jury found that Plaintiff had satisfied all his contractual

7    obligations."  Reply at 1, ECF 294.  Thus, the jury clearly understood that Plaintiff had satisfied

8    the requirement set forth in the instruction that he had to submit *some* medical evidence in support

9    of his claim.  The Court instructed the jury that no specific amount of medical evidence was

10   required, and that other, non-medical evidence could be considered.  The Court emphasized that it

11   was up to the jury to determine whether Plaintiff had submitted the evidence that the policy

12   required.  The most reasonable conclusion to be drawn from these circumstances is that the jury

13   found that Plaintiff satisfied the requirement that he submit some medical evidence but ultimately

14   failed to prove his claim of catastrophic disability.

15             **C.      Denial of *Daubert* Motion Re Dr. Perrillo**

16             Plaintiff argues that the Court erred in denying his Motion in Limine No. 3, seeking to

17   exclude the opinions and testimony of Defendant's expert neuropsychologist, Richard Perrillo,

18   Ph.D.  In a written order applying the analytical framework mandated by the Supreme Court in

19   *Daubert* and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), this Court concluded that

20   Dr. Perrillo's opinions regarding Plaintiff's asserted cognitive impairment and need for assistance

21   or verbal cueing went to the heart of the case and therefore were relevant.  Order Re Motions in

22   Limine at 2-3, ECF 211.  The Court found Dr. Perrillo's opinions to be sufficiently reliable in light

23   of his education, training, and experience as a psychologist and clinician.  *Id*. at 3.  Rejecting the

24   argument that Dr. Perrillo's opinions were unreliable because he did not conduct an in-person

25   examination of Plaintiff, the Court observed that because Plaintiff had waited until *after* his

26

27   [1] Because the Court could not locate the Attending Physician's Statement in the materials
     submitted by the parties in connection with briefing on the motion for new trial, the Court refers to
28   the copy of the Attending Physician's Statement that was submitted by Plaintiff in connection with
     briefing on the motion for summary judgment in this case.

1    alleged catastrophic disability abated to submit his insurance claim, it was "unclear what relevant

2    information Dr. Perrillo could have obtained from an examination taken years later." *Id*. Under

3    those circumstances, the Court found, "Dr. Perrillo necessarily had to rely on records dating back

4    to the time period in which Plaintiff's alleged disability manifested." *Id*. The Court noted that

5    many courts have upheld claims decisions based on an expert's review of the paper file. *Id*. The

6    Court ultimately determined that the fact that Dr. Perrillo's opinions were based on a paper review

7    rather than an in-person examination went "to the weight of his testimony rather than its

8    admissibility." *Id*. at 3-4.

9         In the current motion for new trial, Plaintiff reiterates his argument that Dr. Perrillo's

10   opinions were subject to exclusion because they were not based on in-person testing. Plaintiff

11   asserts that "neuropsychologists perform and interpret neuropsychological tests, and since no such

12   test was performed in this case, Dr. Perrillo's opinions lacked any foundation in his training and

13   expertise." Motion for New Trial at 6, ECF 287. The only basis proffered for this asserted

14   limitation on the expertise of neuropsychologists is a series of excerpts from the testimony of Dr.

15   Perrillo himself, describing his normal practice of performing neuropsychological testing on the

16   patient and then interpreting the tests to determine the existence of impairments. *Id*. at 7.

17   However, Dr. Perrillo did not testify that neuropsychological testing is the only acceptable method

18   for evaluating impairments. To the contrary, he testified that he has experience treating patients –

19   specifically Vietnam War veterans – who are so impaired that neuropsychological testing cannot

20   be performed. Trial Tr. 1045:3-23, Exh. A to Wall Decl., ECF 293-2. Dr. Perrillo described his

21   50-hour evaluation of Plaintiff's medical records and explained why in his opinion those records

22   were not consistent with a major cognitive disorder. Trial Tr. 984:11-991:23. When challenged

23   during cross examination as to what basis he had to quantify cognitive impairments in the absence

24   of neuropsychological testing, Dr. Perrillo responded, "Well, I have, let's see, 40-something years

25   of experience of looking at people, observing people, interviewing them, testing them. And at the

26   extremes, I will represent to you that the error rate would be very small." Trial Tr. 1046:1-9.

27        The Court concludes that Plaintiff has not presented any basis for reconsideration of the

28   *Daubert* ruling regarding Dr. Perrillo.

**D.** **Admission of Dr. Chamberlain's Testimony Regarding "Judgment"**

Plaintiff argues that the Court erred in overruling his objection to the testimony of

Defendant's expert psychiatrist, Jonathan Chamberlain, M.D., regarding Plaintiff's "judgment."

Plaintiff's theory at trial was that he satisfied the policy's definition of "cognitively impaired"

based on a deficiency in his "judgment as it relates to safety awareness." The policy defines

"cognitively impaired" as:

> *a deficiency in* short or long-term memory, orientation as to person, place and time, deductive or abstract reasoning, *or judgment as it relates to safety awareness*. The impairment must be measurable according to generally accepted medical standards.

Policy at CERT 0005 (emphasis added), Exh. A to Creitz Decl., ECF 288-1. Plaintiff sought to

prove a deficiency in his judgment by presenting evidence that he drove recklessly, exhibited

confrontational behavior, and spent money erratically.

Defendant's expert psychiatrist, Jonathan Chamberlain, M.D., addressed this theory at

trial, distinguishing between medically impaired judgment and simply making a bad decision. *See*

Trial Tr. 1396:2-1397:24, 1420:2-8, 1422:1-11, 1429:16-1430:5 Exh. E to Creitz Decl., ECF 288-

5. Plaintiff's counsel objected to Dr. Chamberlain offering any testimony on the subject of

"judgment" on the ground that such testimony was outside the scope of Dr. Chamberlain's expert

reports. Trial Tr. 1393:17-22, Exh. E to Creitz Decl., ECF 288-5. The Court addressed the

objection in a sidebar discussion. Trial Tr. 1393:24-1395:25.

At sidebar, Plaintiff's counsel argued that Dr. Chamberlain's expert reports did not directly

address whether Plaintiff had a deficiency in his "judgment" and in fact did not use the word

"judgment" except when reciting the policy's provisions. *Id*. Defendant's counsel responded by

arguing that even if Dr. Chamberlain's reports did not frame his opinions in the precise terms that

he used in his testimony, Dr. Chamberlain's expert report clearly addressed Plaintiff's theory of

cognitive impairment. Counsel pointed to portions of Dr. Chamberlain's expert report noting that

none of Plaintiff's providers "put into place or recommends instructions, restrictions on finances,

driving, personal assistance, resources for verbal cueing, guardians, hospitalizations and so forth."

Trial Tr. 1395:16-19. Defendant's counsel argued that "[t]his gets to the core of judgment, Your

Honor." Trial Tr. 1395:19-20. The Court overruled the objection and permitted Dr.

1  Chamberlain's testimony.

2  Plaintiff argues that the Court's ruling was in error because Dr. Chamberlain's reports did

3  not state expressly that Plaintiff had failed to show a deficiency in judgment, and the Court's in

4  limine rulings prohibited expert opinions that were not disclosed in discovery. *See* Order Re

5  Motions in Limine at 6, ECF 211. Plaintiff's argument takes too narrow a view of Dr.

6  Chamberlain's reports. "The purpose of expert reports is not to replicate every word that the

7  expert might say on the stand." *Martinez v. United States*, No. 1:16-cv-01556-LJO-SKO, 2019

8  WL 266213, at *8 (E.D. Cal. Jan. 18, 2019) (internal quotation marks, citation, and brackets

9  omitted). "The purpose is instead to convey the substance of the expert's opinion (along with the

10  other background information required by Rule 26(a)(2)(B)) so that the opponent will be ready to

11  rebut, to cross-examine, and to offer a competing expert if necessary." *Id*. (internal quotation

12  marks and citation).

13  Dr. Chamberlain's expert report correctly quotes the policy's definition of "cognitively

14  impaired" as "a deficiency in short or long-term memory, orientation as to person, place and time,

15  deductive or abstract reasoning, or judgment as it relates to safety awareness." Dr. Chamberlain

16  Report at 29, Exh. C to Creitz Decl., ECF 288-3. The report specifically addresses the conduct

17  that is at the core of Plaintiff's claimed deficiency in judgment, including reckless driving,

18  confrontational behavior, and erratic spending. *Id*. at 30-31. The report indicates that it is unclear

19  whether those episodes were related to Plaintiff's bipolar disorder or merely were indicative of his

20  personality traits. *Id*. The report emphasizes that neither Plaintiff's medical providers nor his wife

21  attempted to restrict his ability to drive or manage his finances. *Id*. at 30. The report concludes

22  that Plaintiff was not cognitively impaired under the terms of the policy. *Id*. Dr. Chamberlain's

23  rebuttal report recaps Plaintiff's reckless driving, confrontational behavior, and spending, as well

24  as the lack of any efforts to restrict Plaintiff, and again concludes that Plaintiff was not cognitively

25  impaired. Dr. Chamberlain Rebuttal Report, Exh. D to Creitz Decl., ECF 288-4. Thus, while the

26  reports do not specifically state that Plaintiff failed to show an impairment to his judgment, the

27  reports clearly reject the theory that the conduct identified by Plaintiff establishes a cognitive

28  impairment.

9

1    Plaintiff argues that Dr. Chamberlain conceded during cross-examination that his expert

2    report did not encompass his testimony regarding Plaintiff's judgment.  Plaintiff's counsel asked

3    Dr. Chamberlain whether his expert report "says explicitly Plaintiff was not suffering from an

4    impairment of judgment as it relates to safety awareness?"  Trial Tr. 1534:20-23, Exh. E to Creitz

5    Decl., ECF 288-5.  Dr. Chamberlain replied, "I didn't use those exact words, no."  Trial Tr.

6    1534:24.  The Court does not view that reply as a concession, but as an accurate statement that Dr.

7    Chamberlain's expert report did not frame his opinions using the particular words recited by

8    counsel.  However, for the reasons discussed above, Dr. Chamberlain's trial testimony was not

9    outside the scope of his reports.

10    **E.    Denial of Request to Strike Dr. Chamberlain's Testimony Re ADLs**

11    Finally, Plaintiff argues that the Court should have stricken Dr. Chamberlain's testimony

12    regarding the policy's provision addressing Activities of Daily Living ("ADL").  Under the policy,

13    an insured may establish catastrophic disability by showing either (1) that he lost the ability to

14    safely and completely perform two or more "Activities of Daily Living" without another person's

15    active assistance or verbal cueing, or (2) that he was cognitively impaired and needed another

16    person's assistance or verbal cueing for his protection or for the protection of others.  Because

17    Plaintiff's claim was based solely on the second prong involving cognitive impairment, the Court

18    granted Plaintiff's Motion in Limine No. 9 to exclude testimony regarding ADLs.  Order Re

19    Motions in Limine at 7, ECF 211.

20    Dr. Chamberlain testified that although Plaintiff was claiming disability only under the

21    cognitive impairment prong, evidence regarding Plaintiff's ability to perform ADLs was relevant

22    to determining the severity of his impairment.  Trial Tr. 1389:14-1390:11, Exh. E to Creitz Decl.,

23    ECF 288-5.  Plaintiff's counsel did not object at that point.  However, when Dr. Chamberlain later

24    returned to the topic of ADLs, Plaintiff's counsel objected.  Trial Tr. 1411:3-12.  The Court held a

25    sidebar discussion after which it sustained the objection.  Trial Tr. 1411:18-1413:8.  The Court

26    subsequently denied Plaintiff's motion to strike Dr. Chamberlain's testimony regarding ADLs, and

27    instead modified Jury Instruction No. 33 to make clear that "Prongs 1 and 2 constitute separate

28    and distinct bases for determining the existence of a catastrophic disability," and that Plaintiff

10

1    claimed benefits only under Prong 2.  Trial Tr. 1488:3-1489:15; Jury Instruction No. 33, ECF 240.

2    The Court declined a request by Plaintiff's counsel to give a more targeted limiting instruction

3    regarding Dr. Chamberlain's testimony, but it stated that Plaintiff's counsel could argue to the jury

4    that doctors do not interpret insurance policies and that the jury should disregard Dr.

5    Chamberlain's testimony regarding use of ADLs to inform a determination of disability under the

6    cognitive impairment prong.  Trial Tr. 1489:8-1490:14.  Plaintiff did just that in his closing

7    argument, telling the jury that, "this insurance company doesn't get to just hire a forensic

8    psychiatrist, have him stand up here and tell you that the ADL prong of this policy, that we've

9    talked about before, remember two prongs, ADL and higher impairment, that the ADL prong

10   somehow lends interpretive weight to the second prong.  It doesn't.  It just doesn't, and the judge

11   has so instructed you."  Trial Tr. 1587:13-19, Exh. C to Wall Decl., ECF 293-4.

12          Plaintiff contends that Dr. Chamberlain's opinions were "irretrievably tainted" by the

13   testimony regarding ADLs, and that the Court did not go far enough to cure the taint.  The Court

14   disagrees.  Dr. Chamberlain's testimony regarding ADLs was quite brief in the context of his

15   testimony overall.  The testimony was cut off as soon as Plaintiff's counsel objected.  The Court is

16   satisfied that the curative instruction, coupled with the closing arguments of Plaintiff's counsel,

17   made clear to the jury that Prong 1 and Prong 2 were independent and that Plaintiff was

18   proceeding only under Prong 2.

19          **F.      The Verdict was not a Miscarriage of Justice**

20          "A trial court may 'grant a new trial only if the verdict is contrary to the clear weight of the

21   evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.'"

22   *Bright Harvest Sweet Potato Co., Inc. v. H.J. Heinz Co., L.P.*, No. 17-35058, 2019 WL 325157, at

23   *3 (9th Cir. Jan. 25, 2019) (quoting *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007)).

24   Plaintiff was given every opportunity to present evidence to the jury showing that he suffered a

25   catastrophic disability within the meaning of the policy, and the jury was instructed consistently

26   with virtually every policy interpretation offered by Plaintiff.  Plaintiff nonetheless failed to

27   persuade the jury that he suffered a covered loss.  Plaintiff has failed to establish that the few

28   rulings that went against him were erroneous.  Consequently, Plaintiff has failed to show that a

new trial is required to prevent a miscarriage of justice.

## IV.  ORDER

Plaintiff's motion for a new trial is DENIED.

Dated:  May 8, 2019

BETH LABSON FREEMAN
United States District Judge